United State District Court For The
District of Columbia

Romes Austin - Plaintiff, pro se
  v                                    Civil Action No. 08-0553 (RCL)(ECF)
Edward F. Reilly, Jr., Defendant

Plaintiff's Response To Defendant's Motion To Dismiss, or In The Alternative and Summary Judgment In Favor of The Plaintiff.

Romes Austin now move the court, and responds to defendant's motion to dismiss or Alternative Summary Judgment, pursuant to Federal Rule of Civil Procedure 12(b), and 56(c).

Plaintiff, humbly request the court to grant all relief sought by issueing an order for injunctive and declaratory relief as well as Five Million Dollars in damages. Defendant's allegations are frivolous.

Grounds One:

Plaintiff was sentence on October 18, 1984 in the Superior Court, case no. 6049-83(c) for murder II in violation of D.C. Code 22-2404.

Facts:

RECEIVED
AUG 11 2008
NANCY MAYER WHITTINGTON CLERK
U.S. DISTRICT COURT

1. The D.C. Board of Parole had initial jurisdiction over

1

plaintiff's sentence under Title 28, D.C.M.R., sec. 204 parole rules, and as was case F 2391-81 (D) thus contend that the assumed resposibility of the U.S.P.C. under the National Capital Revitalization and Self-Government Improvement Act, Pub. Law. No. 105-133 § 11231(c), 11 Stat. 712 (1997), which promulgated the United States Parole Guidelines to be used in parole determination in an out of time rehearing, parole should have been granted as indicated.

2. Plaintiff contends that under the D.C. BOP's 1987 regulations' old law, he should have had a total point score of zero from his previous hearings because of the deductions from sustained program achievements.

### Violation of Plaintiff's Rights Under The Ex Post Facto Clause of the United States Constitution Out Weighing Defendant's Material Facts

3. The USPC, it agents, employees has violated the Ex Post Facto Clause when they relaced the parole regulations, policies, and practices of the District of Columbia Board of Paroles (D.C. BOP) with their own regulations, guidelines and policies in which the applied retroactively to plaintiff, thereby creating a significant risk of increasing plaintiff's punishment.

4. The Commission applied its policie and practices of parole reviews by applying its guidelines, instead of the D.C. BOP, created significant risk of prolonging plaintiff's

2

incarceration and thereby violated the Ex Post Facto Clause.

5. The Commission never acknowledged the lessing deterrent factors of Plaintiff's punishment by not decreasing the severity points that shows suitability to be paroled. On August, 1998 the Commission took over the D.C. BOP's responsibilities for D.C. Code offenders, and Ten years before that, this court ruled that the Commission was obligated to apply the parole rules of the D.C. BOP, not the federal parole guidelines at the hearings of D.C. Code Offenders when the Commission conduct hearings. See Cosgrove v Thornburgh, 703 F. Supp. 995 (D.D.C. 1998).

6. Plaintiff's was suitable after the Two previous hearings as determined under the D.C. BOP's practices by rehabilitative accomplishments not to languishing in federal prison for years past the time when he would have been presumed suitable for parole under the D.C. BOP's practices. See Fletcher v Reilly, 433 F.3d 867 (D.C. Cir. 2006) (holding "Retroactive applied parole or reparole regulations or guidelines violates Ex Post Facto Clause if it creates significant risk of prolonging inmate's incarceration.

7. Plaintiff assert, under the District of Columbia Municipal Regulations, "the D.C. Board of Paroles sought to structure the exercise of paroling authority's discretion," thus incorporating a concern for fairness by

3

ensuring that the time served was proportionate to the sentence imposed by the Court and the risk posed by the offender, and achieve the sentencing purpose of incapacitation and specific deterrence, while promoting, to the fullest extent possible, the offender's efforts at rehabilitation. Id. (1987 D.C.M.R. 28 Sec. 100-531.12.

8. Another guideing principal was that the DCBOP practice should evidence "a rehabilitative focuss". see Fletcher, 433 F. 3d at 871; In Cosgrove, the Court factually distinguished the 1987 Regulation from the federal guidelines enacted in 1976, explaining that while the federal guidelines were primarily concerned with punishment and the public safety, the D.C. Regulation emphasized early release of an offender who responded to rehabilitative efforts favorably. Cosgrove, 703 F. Supp. at 1003.

"Degree Of Risk"

9. The degree of risk was the primary factor of the guidelines, based on the so called Sailent Factor Score (SFS), which was an acturial risk assessment device that relied exclusively on information known at the time of incarceration. See 28 DCMR §204.3.

10. Plaintiff contends, in calculating a prisoner's SFS, the DCBOP considered 6 pre-incarceration factor: (1) prior convictions and adjudications, (2) prior commitments of more than 30 day, (3) age at the commission of the cur-

4

rent offense, (4) recent commitments-free period, (5) status of prisoner at time of current offense, and (6) history of opiate dependence.

11. Plaintiff contend, the Commission weighed these regulations by a formula to determine the prisoner's risk category called a Sailient Factor Score. 28 DCMR 204.17. Thus a parole candidate's SFS placed the candidate into one of four categories (10-9 = Low risk, 8-6 = fair risk, 5-4 = moderate risk, and 3-0 = high risk) from which the D.C. BOP would determine a baseline number of points or, (Base Point Score) -0 for low risk.

i.

i. The higher a candidate's SFS, the lower the rist that parole candidet would become a recidivist, and the lower the base point score with which the candidate began for purposes of the Commission's further calculations under the DCMR. Fletcher, 433 F.3d at 871 (citing DCMR § 204.4 - 204.16).

ii. Plaintiff contend, under the Commission's Decision Making Process, and Under the 1987 regulations in this case at bar, his program participation was a mitigating factors, and once the D.C. BOP calculated its base point score and adjusted its base on the "Type of Risk", "Institutional Adjustment," and "Program Achievement" factors under 2.80 Appendix, which is used to constrain the Board's discretion in making a final determination. Fletcher, 433 F.3d at 871 (citing D.C.M.R. § 204.19.

5

iii. In the case at bar, the total point score determined constituted parole being granted, whereby in the case of rehearing after rehearings, the 1987 Regulations, as amended by the DCBOP in 1994, directed to the DCBOP to grant parole to an adult at an initial parole rehearing if the total score was zero, one, two, or three. Once used, the Commission must identify the criteria that applies to determine at the rehearings inconsistencies that would warrant a departure, and deny parole.

12. Plaintiff contend that following this Court's decision in Cosgrove, the USPC instructed its personnel to apply the 1991 Policy Guidelines when conducting parole hearings for D.C. Code Offenders in federal correctional facilities.

13. Many of the discriptive terms used in the Parole Guidelines criteria are judgemental or subjective, and lend themselves to disparate applications by users. To ensure equitable treatment of similarly situated offenders, the terms require definitions that facilitate equitable application across affected cases, while preserving sufficient discretion to accomodate individual circumstances. see 1991 Policy Guideline at 1.

14. As the United States Parole Commission explained upon publishing its interim rules in July 21, 1998, "in a random sample of 100 cases decided, it found in the 1997 decisions, departures in more than half of those cases."

6

i. Based on these studies the new guidelines in fact did increase the period of incarceration that D.C. Code Offenders would have to serve. The U.S.P.C. has followed the 1987 regulations since 1998 in that have increased the period of incarceration that offenders convicted of certain crimes, including plaintiff, must serve to establish that he is presumed suitable for parole. Under the D.C. parole policy, an offender who committed a crime of violence that resulted in the victim's death, even if that crime was murder, has satified the offense deterrent factors, and offense's accountability once the offender has served his/her "minimum sentence".

ii. The USPC repeatedly denied plaintiff's request for parole, including on offense severity on the grounds that it believes he, plaintiff have not served enough time on their offenses, which is the case at bar. This is true eventhough plaintiff is under the 1987 guidelines old law, and as the USPC acknowledges that he should be paroled at this time.

### Accountability Guidelines The USPC Used

15. In the 2000 Guidelines, the U.S.P.C. re-defined the term unusual circumstances. The Commission ignored the 1987 policy's definition of unusual circumstances as any factors that a USPC hearing examiner or commissioner can think of that is not accounted for already in the calculation of a parole candidate's total point score

7

under the 1987 parole policy. See 28 C.F.R. § 2.80(n)(1).

16. The practice under 1987 policy is, offenses being evaluated had satisfied the accountability for his conduct to serve the need for punishment, retribution, and general deterrence once the candidate becomes eligible for parole release, i.e., after serving the minimum portion of the sentence imposed by the Court.

17. The Commission determined that it would ignore this assumption under the 2000 Guidelines applied in this case by applying a classic federal parole guideline principle by considering based on the severity of a parole candidate's offense. 28 CFR § 2.73(b). In the 1987 Policy and DCBOP's practice was an "assumption", whereby the USPC determined could be changed into "presumption" based on the gravity of the offense.

18. The Commission made another similar change and applied it to this plaintiff's parole eligibility matter, when the 1987 old law regulations should have been put in place just as when they were applied at initial hearings in 1998. The USPC should have assumed that plaintiff had satisfied offense accountability when he became eligible for parole. The United States Parole Commission (USPC) purportedly presumes this fact, but ignores the presumption whenever it decides that the Court's sentence was inadequate to satisfy the goals of punishment, retribution, and general deterrence.

19. In plaintiff's last three hearings - rehearings, the

commission relied on the exact same set of factors which constitute double-counting. Id at Notice of Action dated 12/14/07. The standard applied by the hearing examiners in Plaintiff's case does depreciate the mitigated factors, does promote disrespect for the law, wherefore is counter productive. Cosgrove v Thornburgh, 703 F. Supp. 995 (D.D.C. 1988).

## CONCLUSION

Wherefore, these reasons stated in Plaintiff's Respons, to Defendant's Motion to Dismiss or In The Alternative Summary Judgment, prays this honorable court make him whole, and further request relief, issuing a declaratory judgment against the Ex Post Facto Law violation under the U.S. Constitutions First Amendment; 3rd, 4th, 5th, and 14th Amendment;

Issue plaintiff permanent relief, a temporary restraining order and preliminary injunction restraining defendant and their agents, employees, and all persons acting in concert or cooperation with the defendants or at their direction or control; and

Further, enforce an order upon the defendants to issue a USPC parole order granting parole consistent with the DCBOP interpreted its parole practices in 1987, and 1991; award plaintiff money damages, and

9

reasonable attorney fees; Grant plaintiff all other relief that is equitable fair and just.

                                                Respectfully Submitted,

                                                Romes Austin

                                                Romes Austin-Reg.# 00070-000

                                                F.C.I. Gilmer

                                                P.O. Box - 6000

Date: 5/5/08                                Glenville, W Va 26351

## Certificate of Service

I, hereby certify and state that a true and accurate copy of the aforegoing Response To Defendant's Motion To Dismiss, or In The Alternative Summary Judgment, was placed into this institution's mail basket on this 5th day of August, 2008, to make service on the United States Attorney's Office - 555 4th Street, N.W., - Civil Division - Washington, D.C. 20530.

