UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
MAR 2 5 2009
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| ROMES AUSTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-553 (RCL) |
| ) | |
| EDWARD F. REILLY, JR., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff filed this *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that the parole authority violated his constitutional protection against *ex post facto* laws. The defendant filed a motion to dismiss the complaint or, in the alternative, for summary judgment. Because the complaint fails to state an *ex post facto* claim upon which relief may be granted, the defendant's motion to dismiss the complaint will be granted and all other pending motions will be denied as moot.

### I. BACKGROUND

Plaintiff Romes Austin was convicted in 1982 of assault with intent to rob, a violation of the D.C. Code that involved Austin shooting two people during the crime. Compl. ¶ 1. He was convicted again in 1984 for for "Murder II" in violation of the D.C. Code, a crime that involved a murder for hire. *Id.* ¶ 2. In the aggregate, the Austin was sentenced to serve a minimum of 21 and a maximum of 75 years. *Id.* ¶¶ 1-2. He is incarcerated in a federal prison facility, having not yet been released on parole.

Austin's initial parole eligibility date was November 14, 1997. *Id.* ¶ 3. His first parole hearing was held before the District of Columbia Board of Parole ("Board") in 1997, which applied guidelines and a numerical scoring system that had been adopted by the District of Columbia in 1985 and published in 1987 ("1987 Guidelines"). *Id.* ¶ 5; *see also Sellmon v. Reilly ("Sellmon I")*, 551 F. Supp. 2d 66, 69-72 (D.D.C. 2008) (describing the 1987 Guidelines). Although the numerical score calculated from the 1987 Guidelines suggested that Austin was suitable for release, the Board denied him parole due to his "prior failure under community supervision; ongoing or repetitive criminal behavior; and need for programming to remain crime-free in the community." *Id.* ¶ 5 & Ex. 1, D.C. Bd. of Parole, Notice of Board Order, Nov. 7, 1997.

At each of Austin's three subsequent parole hearings, in 2001, 2004, and 2007, the parole authority[1] expressly applied the 1987 Guidelines, calculated a numerical score for Austin that suggested he was suitable for release to the community, but nonetheless denied him parole. *See id.*, Ex. 1, USPC Notice of Action ("NOA"), Jan. 18, 2002; USPC NOA Dec. 23, 2004; and USPC NOA Dec. 14, 2007. In each instance, the recorded justifications for departing from the 1987 Guidelines presumption of suitability for release emphasized the nature of Austin's offenses as they related to a perceived risk for the community. For example, in its first NOA, the Commission noted that the offenses for which Austin was serving time were "particularly aggravated," involving a robbery in which Austin "shot not only [his] codefendant but also an

---

[1] Since August 5, 1998, the United States Parole Commission ("USPC" or "Commission") has been the parole authority for all persons convicted of criminal violations under the D.C. Code. Before that time, the parole authority was the Board. *See Sellmon I*, 551 F. Supp. 2d at 68-69.

innocent victim" and was "subsequently involved in a murder for hire in which [Austin was] paid to murder the husband of a woman for money." USPC NOA, Jan. 18, 2002. The Commission concluded that Austin's offense history made him "a more serious risk to commit further violent behavior in the community," and that coupled with his failure to attain a GED or complete a course of vocational training, "continued programming and counseling" was warranted. *Id.* Similarly, in 2004, using language identical to some it had used in the 2002 NOA, the Commission explained that it was deviating from the Guidelines to deny parole because

> you were involved in a robbery, [during] which you shot two people, and you were subsequently involved in a murder for hire in which you were paid to murder the husband of a woman for money. The commission of these multiple violent acts makes you a more serious risk to commit further violent behavior in the community if released at this time.

USPC NOA, Dec. 23, 2004. In 2007, after Austin's most recent parole hearing, the Commission again denied parole despite a favorable numerical score (which incorporated an unfavorable rating for poor institutional behavior). USPC NOA, Dec. 14, 2007. The Commission rested its deviation from the Guidelines on the "aggravating circumstances" attendant to his offenses for robbery and murder for hire. *Id.*

Plaintiff filed this complaint, seeking a declaratory judgment that the Commission had created a liberty interest for him "by [repeatedly] stating on paper that it was applying D.C.'s 1987 Guidelines." Compl. at 36. The complaint also alleges that by actually applying the 2000 Guidelines instead of the 1987 Guidelines, the Commission violated his constitutional protection from *ex post facto* laws. *Id.* at 5, 7 ¶ 9, 36. The complaint seeks a temporary and permanent injunction against using the 2000 Guidelines in Austin's parole decisions, and money damages. *Id.* at 36-37.

## II. DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A court considering a Rule 12(b)(6) motion to dismiss assumes all factual to be true, even if they are doubtful. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *Kowal v. MCI Communc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that a court must construe the complaint "liberally in the plaintiffs' favor" and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged"). A court need not, however, "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must [a] court accept legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 127 S. Ct. at 1964-65 (internal citations and quotations omitted) (alteration in original). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true . . . ." *Id.* at 1965 (citations and footnote omitted).

A.  Plaintiff's <u>*Ex Post Facto*</u> Claim

The constitution prohibits Congress from passing any *ex post facto* law. U.S. CONST. art. I, § 9. cl. 3. To violate the prohibition, the "law must be retrospective, that is, it must apply to events occurring before its enactment, and . . . must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430 (1987); *see also Collins v. Youngblood*, 497 U.S. 37, 42-43

(1990) (stating that "'any statute . . . which makes more burdensome the punishment for any crime, after its commission . . . is prohibited as *ex post facto*'") (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)). "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). As applied to parole decisions, a plaintiff may invoke an *ex post facto* protection only on the basis of the parole regime that was in effect at the time he committed his offense. *Sellmon I*, 551 F. Supp. 2d at 85 (citing *Weaver*, 450 U.S. at 30).

At the time Austin committed the offenses for which he is still under sentence, parole eligibility was determined by a statute in effect since 1932, which provided in pertinent part that:

> in imposing sentence on a person convicted in the District of Columbia of a felony, the justice or judge of the court imposing such sentence shall sentence the person for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced may be released on parole as herein provided at any time after having served the minimum sentence.

D.C. Code § 24-403(a) (2001) (formerly codified as 24-203(a) (1981)). The parole authority operated pursuant to a statute, also in effect since 1932, which provided that:

> [w]henever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C. Code § 24-404(a) (2001) (formerly codified as § 24-204(a) (1981)).

At that time, the Board made parole decisions according to guidelines it had promulgated in 1981, which required it to take into account the following six factors in making its parole determination:

> (a) The offense, noting the nature of the violation, mitigating or aggravating circumstances and the activities and adjustment of the offender following arrest if on bond or in the community under any presentence type arrangement.
>
> (b) Prior history of criminality noting the nature and pattern of any prior offenses as they may relate to the current circumstances.
>
> (c) Personal and social history of the offender, including such factors as his family situation, educational development, socialization, marital history, employment history, use of leisure time and prior military experience, if any.
>
> (d) Physical and emotional health and/or problems which may have played a role in the individual's socialization process, and efforts made to overcome any such problems.
>
> (e) Institutional experience, including information as to the offender's overall general adjustment, his ability to handle interpersonal relationships, his behavior responses, his planning for himself, setting meaningful goals in areas of academic schooling, vocational education or training, involvements in self-improvement activity and therapy and his utilization of available resources to overcome recognized problems. Achievements in accomplishing goals and efforts put forth in any involvements in established programs to overcome problems are carefully evaluated.
>
> (f) Community resources available to assist the offender with regard to his needs and problems, which will supplement treatment and training programs begun in the institution, and be available to assist the offender to further serve in his efforts to reintegrate himself back into the community and within his family unit as a productive useful individual.

*Glascoe v. Bezy,* 421 F.3d 543, 544-45 (7th Cir. 2005) (quoting 9 D.C.R.R. § 105 (1981)). While the 1981 guidelines listed factors to consider, they "offered no guidance as to how these factors should be weighted in [any] decision." *Sellmon I,* 551 F. Supp. 2d 66, 86 n.15 (D.D.C. 2008) (discussing 9 D.C.R.R. § 105.1). Under that regime,

> the Board had no formalized scoring system, but was required by regulation to consider factors such as the inmate's offense, prior history of criminality, personal and social history, physical and emotional health, institutional experience, and availability of community resources, when exercising its discretion to authorize parole. . . . The decision to grant parole remained within the discretion of the Board, provided "there [was] a reasonable probability that a prisoner w[ould] live and remain at liberty without violating the law, [and] that his release [was] not incompatible with the welfare of society," . . . a provision that mirrored the parole statute then in effect.

*Davis v. Henderson*, 652 A.2d 634, 635 (1995) (citing 9 D.C.R.R. § 105.1(a) - (f) (1981)). The Board's discretion under this regime has been described as "almost unbridled" *Sellmon I*, 551 F. Supp. 2d at 86 n.15, and "totally unfettered," *Sellmon v. Reilly ("Sellmon II")*, 561 F. Supp. 2d 46, 50 (D.D.C. 2008).

In 1985, the D.C. Board of Parole adopted guidelines to channel its discretion; these guidelines were published and codified in 1987. *Sellmon I*, 551 F. Supp. 2d at 69 - 71 (discussing the purpose and operation of the 1987 Guidelines). Ostensibly, these are the guidelines that the Commission now uses when considering Austin's parole applications. Austin does not, however, claim that the parole authority's use of the 1987 Guidelines violates his *ex post facto* protection. Such a claim was addressed and squarely rejected in this district in *Sellmon*. *See Sellmon I*, 551 F. Supp. 2d at 86 (dismissing *ex post facto* claims of plaintiff Charles Phillips); *Sellmon II*, 561 F. Supp. 2d at 50 (denying plaintiff Charles Phillips' motion for reconsideration). Rather, Austin alleges that in fact, in making his parole determinations the Commission merely claims to use the 1987 Guidelines when it actually uses the 2000 Guidelines, and that he is thereby disadvantaged. *See* Compl. at 5, 7 ¶ 9, 36.

These allegations, even if true, do not state a claim for a violation of the plaintiff's *ex post facto* protection. In order to state an *ex post facto* claim, plaintiff would have to allege that the

parole authority is applying later-adopted laws that disadvantage him instead of the laws that were in effect at the time he committed the offenses. *Weaver*, 450 U.S. at 30 ("Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed with the crime was consummated."). Plaintiff does not, and clearly does not intend to, make such a claim. Accordingly, the plaintiff's *ex post facto* claim will be dismissed for failure to state a claim upon which relief may be granted.

B.      Plaintiff's Liberty Interest in the 1987 Guidelines

Plaintiff argues that because the parole authority has consistently acknowledged that it applies the 1987 Guidelines in making his parole determinations, he has a liberty interest in the 1987 Guidelines. The plaintiff's concern with a liberty interest in connection with an *ex post facto* claim is misplaced. A liberty interest is irrelevant to an *ex post facto* analysis. *Weaver*, 450 U.S. at 30 n.13. "The presence or absence of an affirmative, enforceable right is not relevant . . . to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Id.* at 30. "When a court engages in *ex post facto* analysis, which is concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred, it is irrelevant whether the statutory change touches any vested rights." *Id.* at 30 n.13.

Although a liberty interest may be critical to a due process claim, it does not appear that the plaintiff intended to assert a claim for violation of due process, even though the Fifth and Fourteenth Amendments are mentioned in the introductory and relief paragraphs of the complaint. *See* Compl. at 1, 36. In any case, the District of Columbia Court of Appeals, which is

the authoritative body regarding the interpretation and construction of the District of Columbia's laws, has determined that the 1987 Guidelines do not give rise to a liberty interest because both the governing statute, D.C. Code § 24-404(a), and the 1987 Guidelines commit parole decisions to the discretion of the parole authority. *McRae v. Hyman,* 667 A.2d 1356, 1361-62 (D.C. 1995)).

> In sum, the District's parole system is grounded in the exercise of discretion by the Board, with a numerical system to aid in the exercise of that discretion. The numerical system is not a rigid formula, however, because the Board is not required to either grant or deny parole based upon the score attained. . . . [T]he Board[ has] authority, in unusual cases, to ignore the results of the scoring system and either grant or deny parole in the individual case, conditioned upon the Board's setting forth in writing those factors it relied on in departing from the result indicated by the scoring system. Therefore, because the statute and [r]egulation[s] vest in the Board substantial discretion in granting or denying parole . . . they lack the mandatory character which the Supreme Court has found essential to a claim that a regime of parole gives rise to a liberty interest.

*Id.* at 1362 (internal quotation marks, footnotes, and citations omitted). *See also Ellis v. District of Columbia,* 84 F.3d 1413, 1420 (D.C. Cir. 1996) (holding that the 1987 Guidelines "do not give any prisoners a liberty interest in parole"). Plaintiff has not alleged facts demonstrating that the parole decision under the 1987 Guidelines has a mandatory character that would give rise to a constitutional liberty interest. To the contrary, the facts plaintiff has alleged demonstrate that the parole authority does depart from the 1987 Guidelines in some cases, including in the plaintiff's case. Accordingly, plaintiff has not shown that he has a liberty interest in the 1987 Guidelines, and his request for a judgment declaring that he has a liberty interest in the 1987 Guidelines will be denied for failure to state a claim upon which relief may be granted.

## III. CONCLUSION

For the reasons stated, the plaintiff's complaint does not state an *ex post facto* claim upon which relief may be granted and he has no liberty interest in the 1987 Guidelines. Accordingly, the plaintiff's complaint will be dismissed, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and all other pending motions will be denied as moot. A separate order accompanies this memorandum opinion.

Date: 3/25/09

/s/ Royce C. Lamberth
ROYCE C. LAMBERTH
Chief Judge